No. 11,752.

## SUCCESSION OF THOMAS BARRY.

Without adequate proof of judgment of divorce *a vinculo matrimonii* having been signed by the judge, the claim of a woman once married legally can not be disregarded in a controversy between her and the public administrator, relative to appointment of an administrator.

In such controversy the title of the opponent is not put at issue, and the court only deals with the *prima facie* validity of her claim to the estate of the deceased.

APPEAL from the Civil District Court for the Parish of Orleans. *Monroe, J.*

*Chretien & Southon* for Public Administrator, Appellant.

*Oliver B. Sansum* and *Charles Louque* for Opponent cite: 23 An. 262; 3 An. 482; 24 An. 259, 518; 45 An. 1382; 35 An. 630; 8 Paige, 574.

Argued and submitted April 10, 1895.
Opinion handed down April 22, 1895.

The opinion of the court was delivered by

WATKINS, J. This record presents a controversy over the appointment of a legal representative to the succession of Thomas Barry, deceased, between the public administrator and Mary Barry, as the surviving widow.

Thomas Barry departed this life, *intestate*, in the city of New Orleans, on the 10th of July, 1894, and soon afterward the public administrator presented a petition to the court praying to be appointed administrator—alleging that the deceased left no heirs and died *intestate*.

This application was opposed by Mary Barry, on the allegation that she was the surviving spouse of the deceased and entitled to administer his estate.

Judgment having been rendered in her favor, she qualified a once and received letters of administration.

From that judgment the public administrator has appealed.

In her original opposition, Mary Barry simply alleged that she was "the lawful widow of said Thomas Barry, deceased;" and she was thereafter ruled by the court to supplement her opposition by setting out the date of her marriage to the deceased, the place when her marriage was celebrated, and the name of the officer officiating at the marriage.

In response to the aforesaid order of the court, the opponent filed the following amended opposition, viz.:

That she was married to the deceased on the 6th of October, 1874, in the city of New Orleans, by the Very Reverend J. Raymond, vicar general, in the presence of three witnesses, and immediately thereafter established their matrimonial domicile in the city of New Orleans.

That they lived together as man and wife until the 15th of March, 1875, when she and her said husband separated from each other and lived apart for about seven months next ensuing. That while thus living separate and apart, opponent and her husband consented and agreed to renew their marital relations; but before thus renewing the same, she and her husband repaired to St. Mary's Church, where they were first married, and, on the 2nd of November, 1875, again renewed their marriage vows, the aforesaid Very Rev. J. Raymond, vicar general, officiating in the presence of witnesses. That at said time and place they made known to the vicar general their intention to be, to thereafter live together as man and wife; and that opponents and said Thomas Barry received the usual and customary benediction of the church.

That immediately thereafter, opponent and her husband established their matrimonial domicile in the city of New Orleans, wherein they subsequently lived and cohabited together as man and wife.

On these issues testimony was taken, with the result of sustaining the averments of the opposition, as far as they go; but it furthe shows that intermediately between the date of the marriage of Thomas Barry to opponent and the aforesaid renewal of their nuptial vows in the presence of a Catholic priest, a suit was brought by the husband against his wife for a decree of final and absolute divorce.

But the proof disclosed that the record had absolutely disappeared from the archives of the court, without any trace thereof remaining, except that afforded by the minute book kept by the clerk of the court.

The minute book shows that the divorce suit was filed and subsequently submitted on the 30th of June, 1875; that a judgment of divorce was rendered on the 1st of July, 1875, and that a motion for a new trial was filed on the 3d of July, 1875.

It further shows that the motion for a new trial was withdrawn on the same day and date.

All of this proof leads to the supposition that there was a judgment rendered, but there is absolutely nothing to show that any decree was ever *signed* by the judge, or that the minutes of the court were signed by him.

The public administrator offered in evidence what appears to have been a certified copy of the judgment rendered in that case as of the 1st of July, 1875, as same appears in the New Orleans *Republican* newspaper of contemporaneous date; but on objection by opponent's counsel same was rejected as inadmissible in evidence on the ground that the signature of the judge can not be eked out in this manner. "That before this notice can be received as competent evidence in the case witnesses must be called who saw the judge sign it or saw the decree of divorce after it issued with the judge's signature to it."

To this ruling no exception was taken on the part of counsel for the public administrator, and that paper is not properly before us.

Independently of the presumption which is raised on this emasculated record, various isolated circumstances are pointed out, the apparent tendency of which is to confirm the reputed divorce of Thomas Barry and wife.

While, on the other hand, it is earnestly contended that the separation of the spouses was brought about by the cruel treatment by Thomas Barry of his wife subsequent to their reconciliation and renewal of marital vows on November 2, 1875.

The administrator's counsel's further contention is, that several years subsequent to the alleged divorce proceedings, Thomas Barry was married to one Margaret Skarda, the marriage ceremony having been performed by a justice of the peace on the 12th of May, 1879, as is shown by a certified copy of the act of marriage.

But the opponent, on the other hand, insists that she was never aware of the existence of any such marriage, though she had been for years aware of the fact that Thomas Barry was openly living, as she supposed, in adultery with another woman.

But the point which strikes our minds with greatest force is that we are called upon to give effect to an alleged decree of absolute divorce *a vinculo matrimonii*, without either the production of even secondary evidence of the averments of the petition exhibiting Thomas Barry's claim to such a decree, or of the signing of *such* a decree by the judge. In so far as the proof that is furnished by the minutes of the court is concerned, the character of the action is left undetermined.

If we are to be guided alone by the *presumption* that is raised on the proof furnished by the record, it would apply quite as well to a decree *a mensa et thoro* as one *a vinculo matrimonii*.

More substantial proof is necessary to justify a judgment sustaining a decree of *absolute* divorce between Thomas Barry and wife.

But even if the proof on that question were more satisfactory, the proof of the legal resumption of marital relations between Thomas Barry and Mary Barry, in accordance with the canons of the Catholic Church, and of their subsequently living and cohabiting together, would justly attach to that union the sanctity of a putative marriage, at least.

In this case, however, there can be no definitive judgment pronounced on the opponent's *title*, as we are at present dealing only with the *prima facie* of her claim. The title is left at large.

Viewing this litigation in that light, our decree must be

Judgment affirmed.